IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORRIS WILLIAMS, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WILLIAMS T. SMINKEY et al., | : | No. 13-2057 |
| *Defendants*. | : | |

MEMORANDUM

PRATTER, J.                                                                                                  JANUARY 13, 2016

Norris Williams's suit centers on his arrest for alleged participation in a "flim flam" scheme and related seizures of property. Defendant Robert Wilsbach, an officer with the Abington police department, as well as Defendants C.T. Lydon, Michael Pecko, and William Sminkey,[1] detectives at the Upper Darby police department (the "Upper Darby Defendants") have moved to dismiss Mr. Williams's Complaint, arguing that Mr. Williams has failed to allege claims against them and that they are entitled to qualified immunity. After being ordered to do so, Mr. Williams responded to Officer Wilsbach's motion, but he has not filed a response to the Upper Darby Defendants' motion, despite a similar order. Because Mr. Williams fails to state claims against any of the Defendants for violation of his due process rights or for malicious prosecution, false arrest, or false imprisonment, including against those Defendants who have not moved for dismissal,[2] the Court will dismiss those claims. However, Mr. Williams has stated a

---

[1] Detective Sminkey is misnamed in the caption of this matter as Williams Sminkey, rather than William Sminkey.

[2] Defendant Officer Womer of the Philadelphia police department answered the Complaint and included the failure to state a claim as an affirmative defense. Defendants Napolitan and Campbell, both also listed in the Complaint as Philadelphia police officers, have not yet been served. Inasmuch as Mr. Williams was granted *in forma pauperis* status and because the arguments raised in the Moving Defendants' papers

1

claim for a violation of his Fourth Amendment rights to the extent he claims that the police stole money and jewelry from his home when attempting to execute an arrest warrant and unlawfully seized a car in which he had a possessory interest. Therefore, such claims will be permitted to go ahead.

**BACKGROUND**

Norris Williams alleges that at about 8:00 p.m. on January 26, 2012, Detective Sminkey, Detective Pecko, Officer Napolitan, and Officer Womer arrested Gary Williams at Gary Willams's home. While at the residence, Officer Womer found and confiscated a sawed-off shotgun. One of the officers also found a blue canvas bank bag and keys to a 2009 Jaguar. The police investigated the registration for the Jaguar and learned that Gary and Norris Williams co-owned the vehicle. Norris Williams claims that he did not become implicated in this investigation until the police saw his name on the registration for that car.[3]

Following Gary Williams's arrest, the police proceeded to Norris Williams's home. Norris Williams was not at home when they arrived. He alleges that the police forced their way into the home (which was then occupied only by his elderly aunt), and took $21 and jewelry from his bedroom. Norris Williams alleges that the police then seized the 2009 Jaguar co-owned

---

apply equally to the Non-Moving Defendants, the Court will dismiss the claims against these three Non-Moving Defendants for the same failure to sufficiently plead. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (permitting a court to dismiss a complaint *sua sponte* for failure to state a claim when the plaintiff is granted *in forma pauperis* status).

[3] Mr. Williams states that he came to this conclusion because he was given a copy of an Affidavit of Probable Cause dated June 18, 2012 (the date of his arrest), which he attached to his Complaint with another copy of the same document dated January 26, 2012. He also claims that Detective Sminkey denied that he signed the affidavit dated June 18, 2012. However, Mr. Williams's speculation about when the arrest warrant was actually issued is refuted by the docket in the state criminal proceeding. *See* Upper Darby Defs.' Mot., Ex. 1, Del. Cnty. Ct. Com. Pl. Crim. Doc. MJ-32133-CR-0000033-2012 (containing docket entries for both the filing of the criminal complaint and the issuance of an arrest warrant on January 26, 2012). The Court may take judicial notice of this docket without converting the motion into one for summary judgment. *See Schafer v. Decision One Mortg. Corp.,* No. 08–5653, 2009 WL 1532048, at *3 (E.D. Pa. May 29, 2009) ("[A] court may take judicial notice of the record from a state court proceeding and consider it on a motion to dismiss.").

2

by him and Gary Williams and gave it to Officer Wilsbach in Abington. He cites "racial profiling" as the reason for the seizure of the Jaguar.

It was not until almost six months later, on June 18, 2012, however, that Norris Williams himself was arrested. On that date, Mr. Williams was stopped by an unnamed Philadelphia police officer for a broken taillight and informed that he was wanted for questioning in Upper Darby. Then at the police department in Upper Darby, Detective Sminkey questioned Mr. Williams regarding his employment and accused him of engaging in a "flim flam" scheme. Mr. Williams was then fingerprinted and booked.

Mr. Williams alleges that the District Attorney withheld portions of various documents from him and his attorney during the pretrial proceedings that followed. He also states his belief that judicial officers cannot receive facts from an Affidavit of Probable Cause from a police officer, but rather that they must hear directly from a victim.

When Mr. Williams filed this case in 2013, charges relating to his claims were still pending in state court. Thus, the Court stayed the case until Mr. Williams's underlying state proceedings terminated, but dismissed Defendants Assistant District Attorney Erica Parham and her supervisor because those claims are barred by prosecutorial immunity. On April 22, 2015, Mr. Williams filed a notice of appeal as to the dismissal of those Defendants and noted that the state court charges had been dismissed on October 22, 2013. Thereafter, the Court reopened this matter and ordered the U.S. Marshal to serve the Complaint on the remaining Defendants. Officer Wilsbach filed a motion to dismiss, followed by a similar motion filed by the Upper Darby Defendants. As previously noted, Mr. Williams missed the response deadline for each of those motions. Each time, the Court ordered him to respond or risk the Court granting the motion as unopposed. Nonetheless, Mr. Williams only responded to Officer Wilsbach's motion.

Officer Womer filed an Answer to the Complaint, setting forth affirmative defenses that include the failure to state a claim.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted).  Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

Mr. Williams is proceeding *pro se*.  Although the Court must construe Mr. Williams's allegations liberally because of his *pro se* status, *Higgs v. Att'y Gen.,* 655 F.3d 333, 339 (3d Cir.

2011), Mr. Williams must still plead more than "labels and conclusions" to state a claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

**DISCUSSION**

Mr. Williams does not explicitly state what claims he is bringing. Generously construing his Complaint, it appears that he asserts various claims under 42 U.S.C. § 1983, which creates a cause of action for individuals who are deprived of their constitutional rights by any person acting "under color of state law." Specifically, Mr. Williams seems to assert § 1983 claims relating to the seizure of his property (jewelry, money, and a car) under both the Fourth and Fourteenth Amendment, and claims for false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment. The Court will begin by discussing two Defendants, about whom the Complaint is devoid of any allegations, and then will discuss each of Mr. Williams's claims in turn.

### I.   Detective Lydon and Officer Campbell

Mr. Williams's Complaint contains no factual allegations concerning Detective Lydon or Officer Campbell. "It is well-settled that '[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.'" *McCain v. Abraham*, 337 F. App'x. 141, 142 (3d Cir. 2009) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Because Mr. Williams has not alleged any involvement of either of these officers in any of the events chronicled in his Complaint, the claims against them must be dismissed.

### II.   Due Process

Much of Mr. Williams's Complaint centers on the alleged seizure of the co-owned Jaguar, as well as the money and jewelry allegedly taken from Mr. Williams's home. To the

extent that Mr. Williams is seeking to assert a due process claim against the Defendants who were allegedly involved in the seizure of his property, his claim must fail because Pennsylvania courts provide an adequate post-deprivation remedy, and he has not alleged that this remedy was somehow unavailable to him.

To state a claim for violation of procedural due process rights, a plaintiff must allege: (1) that he or she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available did not provide the plaintiff "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). While pre-deprivation process is often required to satisfy due process, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Under Pennsylvania Rule of Criminal Procedure 588(A):

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Courts in this Circuit have held time and again that Rule 588 provides a post-deprivation remedy that satisfies due process. *See, e.g., McKenna v. Portman*, 538 F. App'x. 221, 224-25 (3d Cir. 2013) (Rule 588 "provides an adequate post-deprivation remedy when police seize property pursuant to an investigation"); *Levine v. Rodden*, Civil Action No. 15-574, 2015 WL 2151781, at *8 (E.D. Pa. May 7, 2015) (dismissing procedural due process claim because Rule 588 provides a post-deprivation remedy); *Lewis v. Heckler*, Civil Action No.11-6492, 2012 WL 1646862, at *3-4 (E.D. Pa. May 10, 2012) (same); *Kauffman v. Pa. Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 571 (E.D. Pa. 2011) (dismissing procedural due process claim

relating to the seizure of property when plaintiff did "not allege[] that he has availed himself of Rule 588, much less that the procedure the rule establishes is 'unavailable or patently inadequate'") (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  Therefore, to the extent that Mr. Williams attempts to state a procedural due process claim relating to the seizure of his property, his claim must fail.

### III. Fourth Amendment Claims

#### A. False Arrest, False Imprisonment, and Malicious Prosecution

"To state a plausible claim for false arrest, false imprisonment, or malicious prosecution under the Fourth Amendment, a plaintiff must plead sufficient facts to support a reasonable inference that the defendants acted without probable cause and are not entitled to qualified immunity." *Spiker v. Whittaker*, 553 F. App'x. 275, 278 (3d Cir. 2014).  Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco,* 318 F.3d 497, 514 (3d Cir. 2003).  When evaluating allegations of lack of probable cause, the Court examines "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

Mr. Williams does not allege any facts that would suggest that the police lacked probable cause to arrest him.  Indeed, in this case, there was an affidavit of probable cause (which Mr. Williams attached to the Complaint) and a warrant issued for Mr. Williams's arrest.  While a warrant alone will not shield an officer from Fourth Amendment liability, the existence of the warrant means that Mr. Williams must also plead that in obtaining the warrant, the officer

"knowingly or deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and that "such statements or omissions [were] material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation omitted). Mr. Williams's only attack on that warrant is his mistaken belief that a victim, rather than a police officer, must personally testify before a magistrate in order for the warrant to be valid. As the Upper Darby Defendants assert, there is no case law or other authority to support this theory. Thus, Mr. Williams has failed to plead facts suggesting that the warrant was fraudulently obtained or that probable cause was otherwise lacking, and his Fourth Amendment claims relating to his arrest must be dismissed.[4] *See, e.g., Santiago v. Hulmes*, Civil Action No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all of the allegations against them in the underlying criminal proceedings were false); *Anderson v. Yelland*, C.A. No. 1:15-CV-01322, 2015 WL 4902999, at *3 (M.D. Pa. Aug. 17, 2015) (dismissing false arrest claim made by *pro se* litigant for failure to plead probable cause); *Wheeler v. Wheeler*, C.A. No. 3:14-CV-00432, 2014 WL 4716731, at *3-4 (M.D. Pa. Sept. 22, 2014) (dismissing false arrest claim when plaintiff merely pled that he was "unlawfully arrested").

### B. Seizure of Mr. Williams's Property

Mr. Williams's Complaint can also be interpreted as asserting Fourth Amendment claims with respect to the alleged seizure of his jewelry and money, as well as the seizure of the Jaguar.

---

[4] Even assuming Mr. Williams is also asserting state tort law claims for false arrest, false imprisonment, and malicious prosecution, the pleading standards are the same. *See, e.g., Campeggio v. Upper Pottsgrove Twp.*, No. CIV.A. 14-1286, 2014 WL 4435396, at *6 (E.D. Pa. Sept. 8, 2014) (noting that the standards for state tort claims sounding in false arrest and false imprisonment are subject to the same analysis as their § 1983 counterparts).

Mr. Williams appears to allege that the Defendants who were present at Mr. Williams's home on January 26, 2012 to execute an arrest warrant, *i.e.*, Detective Sminkey, Detective Pecko, Officer Napolitan, and Officer Womer, were the people responsible for the seizures.[5] The Upper Darby Defendants' primary argument with respect to the seizure of the jewelry and money is that Mr. Williams failed to identify a specific officer responsible for that seizure, that he "has no evidence" that individual Defendants participated in the seizure of his belongings, and that therefore he has not sufficiently pleaded a claim. While it may ultimately prove to be true that the Upper Darby Defendants did not take anything from Mr. Williams's house on January 26, 2012, the Court must accept the allegations as true, and the allegations state that Detective Sminkey, Detective Pecko, Officer Napolitan, and Officer Womer entered Mr. Williams's home and took Mr. Williams's property. At this stage of the case, then, the Court will not dismiss this claim.[6]

As to the Jaguar, the Upper Darby Defendants argue that a police report attached to Officer Wilsbach's motion shows that a district attorney in Montgomery County authorized the seizure of the vehicle because of its role in the charged "flim flam" scheme. In both motions to dismiss, the Moving Defendants assume that the Court can and will take judicial notice of the police report, calling it a public record, but neither motion offers any case law in support of such

---

[5] Mr. Williams alleges that the seized Jaguar was given to Officer Wilsbach in Abington. He does not allege that Officer Wilsbach had anything to do with the actual seizure; at most, Officer Wilsbach is implicated in the now-dismissed due process claim relating to the Jaguar. And although the Upper Darby Defendants interpret his Complaint as only holding Detective Sminkey responsible for the seizure of the Jaguar, it is not clear to the Court that Mr. Williams limited his allegation in that way. The Court, liberally construing Mr. Williams's Complaint, as it must, reads the Complaint as alleging that the same Defendants who were involved in the attempted execution of the arrest warrant on January 26, 2012 were the Defendants responsible for the seizure of the Jaguar.

[6] The Upper Darby Defendants frame this argument as one for qualified immunity; however, if it is true that, as alleged, they and other officers took jewelry and money from Mr. Williams's home while trying to execute an arrest warrant, they can hardly argue that their conduct was not a clearly established violation of Mr. Williams's rights.

a proposition. Under Federal Rule of Evidence 201(b)(2), judicial notice is appropriate only when a fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts are divided over the issue of whether judicial notice of police reports is ever appropriate, and even when courts do take judicial notice of a police report, they generally only do so "to establish the[] existence and legal effect [of the police report] . . . not for the truth of the matters asserted" therein. *See Rankin v. Majikes*, Civil Action No. 3:CV-14-699, 2014 WL 6893693, at *7 (M.D. Pa. Dec. 5, 2014) (collecting cases). Given the constraints of Rule 201, the Court agrees that, at most, a police report's *existence* may be the subject of judicial notice. It cannot be said that the accuracy of the facts contained therein are beyond question.

Despite Moving Defendants' characterization of the police report attached to Officer Wilsbach's motion to dismiss, the document does not appear to say anything about a district attorney's authorization of the seizure of the car. At most, the report purports to connect the Jaguar to the commission of a crime and to explain its impoundment on those grounds. Thus, even if the Court were to take judicial notice of the *existence* of the police report, the report's existence does not advance Moving Defendants' argument that the seizure of the Jaguar was lawful. In the absence of any other argument for the dismissal of this claim, then, the Court will not grant the Upper Darby Defendants' motion to dismiss Mr. Williams's seizure claim as to the Jaguar.

### IV. Leave to Amend

Under Federal Rule of Civil Procedure 15, leave to amend should be freely granted. Fed. R. Civ. P. 15(a)(2). However, leave to amend may be denied when amendment would be futile. *See Walton v. Mental Health Ass'n. of Southeastern Pa.*, 168 F.3d 661, 665 (3d Cir. 1999). The claims the Court dismisses herein were insufficiently pleaded, and although it does not appear

likely that Mr. Williams will be able to supply sufficient allegations, the Court cannot determine that at this time. Therefore, the Court will allow Mr. Williams to file a motion to amend his Complaint, should he choose to attempt to remedy the flaws outlined in this Memorandum. Any such motion must include a copy of the proposed amended complaint.

**CONCLUSION**

For the foregoing reasons, the Court will grant Officer Wilsbach's motion to dismiss and will grant in part and deny in part the Upper Darby Defendants' motion to dismiss. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge